Filed 12/3/25  P. v. Valenzuela CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>NICOLAS UBALDO VALENZUELA,<br><br>    Defendant and Appellant. | H052929<br>(Monterey County<br>Super. Ct. No. 24CR001786) |

Defendant Nicolas Ubaldo Valenzuela appeals from a final judgment in a criminal action.  Appointed counsel filed an opening brief summarizing the case but raising no issues.  We notified defendant of his right to submit written argument on his own behalf.  Defendant responded by filing a one-page handwritten supplemental brief.

Pursuant to *People v. Wende* (1979) 25 Cal.3d 436 and *People v. Kelly* (2006) 40 Cal.4th 106, we independently reviewed the entire record.  Finding an arguable issue concerning the trial court's decision not to dismiss defendant's prior strike conviction, we invited supplemental briefing from both counsel.  In this opinion, we discuss defendant's contentions and explain why we will affirm the judgment.

## I.   TRIAL COURT PROCEEDINGS

In February 2024, defendant led officers on a high-speed chase after they attempted to conduct a traffic stop on his car.  During the chase, he reached a speed of 130 miles per hour.  When officers eventually stopped the car and arrested defendant, they found a loaded gun on the floor of the car and drugs in defendant's socks.

Defendant was charged with possessing a controlled substance with a firearm (Health & Saf. Code, § 11370.1, subd. (a); count 1), possessing a firearm as a convicted felon (Pen. Code, § 29800, subd. (a)(1); count 2), and reckless evasion of a peace officer (Veh. Code, § 2800.2, subd. (a); count 3). It was alleged that defendant had a prior strike conviction. Five aggravating circumstances were also alleged: (1) that the crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness (Cal. Rules of Court, rule 4.421(a)(1)); (2) that defendant was armed with a weapon when the crime was committed (Cal. Rules of Court, rule 4.421(a)(2)); (3) that defendant's prior convictions as an adult or sustained petitions in juvenile delinquency proceedings were numerous or of increasing seriousness (Cal. Rules of Court, rule 4.421(b)(2)); (4) that defendant had served a prior prison term (Cal. Rules of Court, rule 4.421(b)(3)); and (5) that defendant's prior performance on probation, mandatory supervision, post-release community supervision, or parole was unsatisfactory (Cal. Rules of Court, rule 4.421(b)(5)).

After a motion to suppress evidence was denied, defendant pleaded no contest to counts 2 and 3. He admitted the prior strike conviction and one prior prison term. He also waived the right to appeal his convictions and any orders issued before the date of the plea. The parties stipulated that defendant could move to dismiss his prior strike conviction under *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*). As the trial court and the parties described the agreement, defendant would receive a sentence of up to four years in prison if the court denied his *Romero* motion; if the court granted the *Romero* motion, it could impose a sentence of up to four years in prison or place defendant on probation.

At the hearing on the *Romero* motion, defense counsel informed the trial court that defendant recently married; his wife and mother were present at the hearing; he was participating in various programs; and he was working in construction. Defense counsel argued: "And so our position is that, hopefully, the Court will give him a chance, just

2

give him a chance at probation.  In the past, he did have a case where he was sentenced on, but that one was—my understanding was on remittitur.  It was completely dismissed."[1]  The prosecutor argued in response:  "The People believe, despite that reverse[d] conviction, the Defendant's prior criminal record speaks for itself, and he is within the spirit of the Three Strikes Law."

In ruling on the motion, the trial court noted that defendant had "fled, in heavy traffic, at speeds up to 130 miles per hour, which was an extreme danger" to the public, defendant, and the pursuing officers.  Officers then found a "loaded ghost gun, methamphetamine, and cocaine" in defendant's possession.  Although defendant declined to discuss the offense in detail with the probation officer, he denied having possessed drugs at the time of his arrest.  The court expressed its belief that defendant's statements to the probation officer showed "a lack of remorse and understanding."  The court also noted defendant had "a history of untreated substance abuse" and had told the probation officer that "he would accept outpatient, suggesting that he wouldn't accept residential." He had only recently sought treatment after requesting that the sentencing hearing be continued, which the court viewed as showing "somewhat dishonest efforts … to affect the Court, as opposed to address actual substance abuse."  Defendant denied "any association with criminal street gangs," but the court observed that he was "covered in –

---

[1]  In 2019, defendant pleaded no contest to possessing a firearm as a convicted felon (Pen. Code, § 29800, subd. (a)(1)), possessing ammunition as a convicted felon (Pen. Code, § 30305, subd. (a)(1)), misdemeanor possession of a controlled substance (Health & Saf. Code, § 11350, subd. (a)), and misdemeanor resisting an officer (Pen. Code, § 148, subd. (a)(1)).  The underlying incident took place in 2017.  Those convictions were reversed on appeal in 2020 after a different panel of this court found officers' detention and search of defendant to have been unlawful.  (See *People v. Valenzuela* (Sep. 25, 2020, H046675) [nonpub. opn.].)  The 2024 probation report listed the reversed convictions as part of defendant's criminal record.  It also listed three other felony convictions (all for offenses committed in 2005), as well as various misdemeanors committed between 2002 and 2016.

obvious – in reported gang tattoos" and had been housed at the jail "with fellow gang members, upon his request."

The trial court went on to describe defendant's criminal history, which it said consisted of "five prior felony convictions" including a strike conviction for a 2005 residential burglary. Defendant "was initially placed on probation" for the strike offense, but was sent to prison after violating probation; he also violated parole four times after being released from prison. In addition to other convictions and probation violations, the court referred to a 2017 incident for which it said defendant "was placed on probation as recently as 2019." The court described that incident as defendant "involving himself in guns, and drugs, and showing a threat to the public by possession of firearms." Based on its review of all the circumstances, including defendant's criminal history, the court denied the *Romero* motion.

Before the trial court sentenced defendant, defense counsel alerted the court to the 2019 convictions appearing in the probation report as part of defendant's criminal record despite the charges being dismissed after reversal on appeal. Counsel asked that the reference to that case—which the court had mentioned in its *Romero* ruling—be stricken from the probation report. The court then sentenced defendant to four years in prison, consistent with the plea agreement. Defendant was (incorrectly) awarded five days of presentence custody credit, consisting of three actual days and two days of conduct credit. He timely appealed, indicating on the notice of appeal that he was challenging "the sentence or other matters occurring after the plea that do not affect the validity of the plea."

In March 2025, while this appeal was pending, appointed appellate counsel wrote to the trial court requesting correction of an apparent error in the calculation of defendant's presentence custody credit. Counsel noted that defendant had spent four

4

days in custody and was therefore entitled to an additional day of credit.[2]  In the same letter, counsel asked the court to "rule on defense counsel's request at the sentencing hearing to strike the inclusion of an April 19, 2017 offense in the probation report because the matter was ultimately dismissed."  In August 2025, the trial court amended the judgment to reflect six days of presentence custody credit, consisting of four actual days and two days of conduct credit.  The court also modified the probation report as requested by counsel, striking the reference to the 2019 convictions (for offenses committed in 2017) that had been reversed on appeal.

## II.    DISCUSSION

### A.  FACTORS CONSIDERED IN RULING ON *ROMERO* MOTION

We review the trial court's denial of defendant's *Romero* motion for abuse of discretion.  (*People v. Carmony* (2004) 33 Cal.4th 367, 374.)  A trial court is permitted to strike one or more prior felony conviction allegations under Penal Code section 1385 for sentencing purposes, but a "court's discretion to strike prior felony conviction allegations in furtherance of justice is limited."  (*Romero*, *supra*, 13 Cal.4th at p. 530.)  In exercising its discretion, a trial court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the [Three Strikes] scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies."  (*People v. Williams* (1998) 17 Cal.4th 148, 161.)  A trial court may abuse its discretion if it considers "impermissible factors" in declining to dismiss a prior strike.  (*Carmony,* at p. 378.)

---

[2]  We note the fourth day of actual custody credit remedied the previous inconsistency with Penal Code section 4019 due to the award of conduct credits on fewer than four days' actual custody.

We invited supplemental briefing on the question of whether the trial court considered impermissible factors in ruling on defendant's request to dismiss his prior strike conviction. Specifically, we asked the parties to address whether the court improperly considered what it considered defendant's two most recent felony convictions from 2019, despite the parties' agreement that those convictions were reversed on appeal and were no longer part of defendant's criminal record. In supplemental briefing, defendant argues reversal is required because the court in part based its denial of the *Romero* motion on the reversed convictions. The Attorney General contends the court did not base its decision on those convictions and, even if it did, any error was harmless. (We also invited the parties to address whether defendant forfeited the issue by not specifically objecting after the trial court announced its reasons for not dismissing the prior strike. As to that question, the Attorney General acknowledges that defense counsel's comments sufficiently "brought the error to the court's attention" and therefore does not assert forfeiture.)

In discussing defendant's criminal history, the trial court referred to defendant's "five prior felony convictions" without acknowledging that two of those felonies had been reversed. The court specifically mentioned the 2017 incident that resulted in the reversed convictions, and noted the conviction offenses in that case. It described the incident as defendant "involving himself in guns, and drugs, and showing a threat to the public by possession of firearms."

After the trial court announced its reasons for not dismissing the prior strike, defense counsel alerted the court to the error in the probation report's description of defendant's criminal record and asked that it be corrected. Based on that exchange, the Attorney General asserts the court "impliedly reiterated its ruling" and "presumably denied the *Romero* motion without relying on" the 2019 convictions, which the Attorney General acknowledges the court should not have considered. We see no indication in the record that the court actually revisited its *Romero* analysis after being alerted to the error.

6

That the court did not correct the probation report until August 2025—prompted by a further request from appellate counsel—makes even less clear that it took the correction into account when deciding the *Romero* motion.

We therefore examine whether consideration of the 2019 convictions should lead to reversal on this record. In their supplemental briefs, the parties appear to disagree about the prejudice standard we should apply. Defendant cites *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391, which discusses the standard that applies when a trial court is not aware of the full scope of its sentencing discretion. In that context, the California Supreme Court has "held that the appropriate remedy is to remand for resentencing unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.' " (*Ibid.*) The Attorney General cites *People v. Price* (1991) 1 Cal.4th 324, 492, which states that where "a trial court has given both proper and improper reasons for a sentence choice, a reviewing court will set aside the sentence only if it is reasonably probable that the trial court would have chosen a lesser sentence had it known that some of its reasons were improper." Here it is clear that the trial court knew the scope of its discretion as to both the *Romero* motion and the range of available sentencing options. The question is not how the court would have ruled if it understood the full scope of its discretion, but whether it may have exercised its discretion differently had it not considered the inaccurate information about the status of defendant's criminal record. We therefore adopt the standard for assessing prejudice as proposed by the Attorney General. (See, e.g., *People v. Leonard* (2014) 228 Cal.App.4th 465, 503 (*Leonard*).)

Under that standard, defendant has not shown prejudice. We acknowledge that the reversed convictions were the most recent prior offenses mentioned by the trial court in support of its ruling, and they represent the only two felony offenses since 2005. Had the trial court based its denial of the *Romero* motion exclusively or even primarily on defendant's criminal history, reversal might be required. But before addressing

7

defendant's criminal history, the court mentioned that by his conduct in the current case defendant placed himself and others in "extreme danger" and that he had shown "a lack of remorse and understanding" about the seriousness of the events in his interview with the probation officer. The court mentioned additional factors including defendant's "history of untreated substance abuse," the self-serving "last minute" timing of his efforts to address that issue, and his denial of "any association with criminal street gangs" despite his request to be housed with a particular gang in the jail. Those factors provide independent support for the trial court's decision. (See *Leonard*, *supra*, 228 Cal.App.4th at p. 503.) Even limiting the analysis to only those factors and the offenses that properly remained part of defendant's criminal record at the time of the court's ruling, on this record we see no reasonable probability that the court would have dismissed the prior strike.

In his handwritten brief (supplementing counsel's opening brief and filed before we invited further briefing from counsel), defendant contends the trial court "stereotype[d him] for a tattoo" on his right cheek that the court misinterpreted as gang-related. We note that defendant did not object at the time to the court's consideration of his "reported gang tattoos" and thus forfeited the issue. But even assuming the court's characterization and consideration of defendant's tattoos was incorrect, we would find no prejudice under the applicable standard. The court mentioned defendant's tattoos only briefly as one of two reasons it did not find defendant's denial of "any association with criminal street gangs" to be credible. The other, more compelling reason was, as the court described it, defendant being housed at the jail "with fellow gang members, upon his request." We acknowledge the possibility that a tattoo may be misinterpreted and that even gang-related tattoos may not reflect a defendant's current gang affiliation. But in light of all the factors properly noted and weighed by the trial court, we see no reasonable probability that the court's assessment of defendant's facial tattoo materially affected the outcome of the *Romero* motion.

**B. REMAINING ISSUES**

Defendant also states in his handwritten supplemental brief that he was "manipulated" into signing a form containing an appellate waiver that he believed to be a different document that had reflected a more favorable disposition. That assertion is not supported by the record. At the time of his plea, defendant confirmed to the court that he understood and accepted the terms of the plea agreement. He also answered affirmatively when specifically asked by the court whether he understood he was "waiving [his] state and federal writs and appeals rights." Defendant does not raise an arguable issue with respect to his waiver of certain appellate rights.

In our request for supplemental briefing, we asked counsel to notify us of any action taken by the trial court to correct apparent errors in the probation report and presentence custody credits raised by defendant's appellate counsel in a March 2025 letter to the trial court. As we have discussed, the trial court made both requested corrections in August 2025, and the parties agree that the amended abstract of judgment now accurately reflects the six days of presentence credit to which defendant is entitled. We will therefore affirm the judgment as modified by the trial court.

## III.    DISPOSITION

The judgment is affirmed.

9

_____

Grover, J.

**WE CONCUR:**

_____

Greenwood, P. J.

_____

Lie, J.

H052929
*The People v. Valenzuela*